Richard H. YOUNG *v.* Stark LIGON, Executive Director, Committee on Professional Conduct

07-990                                              283 S.W.3d 587

Supreme Court of Arkansas
Opinion delivered April 24, 2008

*Richard Young*, pro se appellant.

*Stark Ligon*, Executive Director, Committee on Professional Conduct, for appellee.

ROBERT L. BROWN, Justice. Appellant Richard H. Young appeals from an order of the Supreme Court Committee on Professional Conduct ("Committee") finding him in violation of two provisions of the Arkansas Rules of Professional Conduct and suspending his license to practice law for six months. We affirm the suspension.

The facts leading up to the Committee's order are these. On March 5, 2004, Young received notice from the Committee that his license to practice law was going to be suspended for three months as a result of his failure to respond to a complaint that had been made before the Committee. Young was informed that the suspension would become final unless he filed a motion for reconsideration within twenty days. Young failed to file a motion for reconsideration, and the suspension was filed and became final on March 30, 2004, when the Committee filed its order with the clerk of this court.

Despite having knowledge of his pending three-month suspension, Young met with Linnie Thomas and her son, Justin Thomas, who had been charged with a felony, on March 22, 2004. The Thomases engaged Young as Justin Thomas's attorney, and Ms. Thomas paid Young $3,000 of the $10,000 fee that he requested. At no time did Young inform the Thomases that his license to practice law was shortly due to be suspended. Ms. Thomas later learned of Young's three-month suspension in the newspaper. Unable to reach Young via telephone, the Thomases eventually engaged another attorney to represent Justin Thomas.

As advised by her new attorney, Ms. Thomas requested an itemized bill and refund from Young. When no bill or refund had been received by August 4, 2004, Ms. Thomas filed a complaint with the Committee. On February 28, 2006, the Office of Professional Conduct sent Young a letter informing him of the complaint that had been made against him.[1] Young and Ms. Thomas communicated, and he agreed to repay her $2,500 of the money she had paid him.[2] On June 5, 2006, he sent her the first installment of the refund, a money order for $200. Young failed to make any additional payments to Ms. Thomas.

On September 29, 2006, a summons and complaint were sent to Young via certified mail. It is not apparent from the record that Young received or signed for this letter. On October 13, 2006, Young sent Ms. Thomas another money order in the amount of $300. On October 26, 2006, the summons and complaint were again mailed to Young, who returned an affidavit of service on November 9, 2006, and filed a response. A panel of the Committee found that Young violated Rules 1.4(b) and 8.4(c) of the Arkansas Rules of Professional Conduct and suspended him for six months. The panel also ordered Young to pay $2,500 in restitution to Ms. Thomas. Young then requested a public hearing.

A hearing was held before Panel B of the Committee on June 15, 2007. At that time, despite the fact that more than three years had passed since Young accepted $3,000 from Young and more than one year had passed since Young agreed to refund $2,500 to Ms. Thomas, Young had only refunded $500. Young did not dispute the factual allegations made against him by the Committee or the fact that he owed Ms. Thomas $2,000. He contended, nevertheless, that a suspension would make it nearly impossible for him to find a good-paying job where he could pay the restitution owed to Ms. Thomas. Young also argued that his conduct was not intentional. As a mitigating factor, he noted his wife's severe depression and prescription drug dependence.

The Committee unanimously found that Young's conduct violated Rule 1.4(b) and Rule 8.4(c) of the Arkansas Rules of Professional Conduct. As a result, the Committee, by a vote of

---

[1] The Committee provides no reason for the substantial delay between the filing of the complaint and the letter sent by the Office of Professional Conduct.

[2] Young was to retain $500 for the legal services he had performed prior to the suspension of his license.

four to three, suspended Young's license to practice law for six months,[3] ordered Young to pay Linnie Thomas restitution of $2,000, and assessed fees and costs against him of $100. Young appeals only the suspension of his license.[4]

Young now asserts on appeal, as he did before the Committee, that he did not formally withdraw from Justin Thomas's case because he mistakenly thought that he had arranged for another attorney to complete Justin Thomas's representation without any additional fee. It was only upon speaking to Ms. Thomas in the line at the grocery store, he notes, that he knew that the matter had not been satisfactorily resolved. He claims that, after his three-month suspension, he was in a shaken frame of mind and not fully able to grasp his situation. The prior suspension of which Young failed to inform the Thomases, he states, was not the result of his behavior to a client but rather of his failure to respond to the disciplinary complaint. Therefore, he maintains, it is inconsistent[5] and unduly harsh to consider his previous suspension as an aggravating factor that justifies the imposition of a suspension, rather than a reprimand, in the case at hand. Moreover, Young argues that, if his license is suspended, it will be extremely difficult for him to find other employment. This, he notes, will adversely affect his ability to repay Ms. Thomas the money he owes her. The Committee did not file a brief in response.

We initially observe that Young does not challenge the Committee's finding that he violated the Rules of Professional Conduct but only the decision to suspend his license for six months. In reviewing appeals from the Committee, this court conducts a *de novo* review on the record and affirms actions taken by the Committee unless they are "clearly against the preponderance of the evidence." *Walker v. Sup. Ct. Comm. on Prof'l Conduct*, 368 Ark. 357, 362, 246 S.W.3d 418, 422 (2007) (quoting *Comm. on Prof'l Conduct v. Revels*, 360 Ark. 69, 73, 199 S.W.3d 630, 632) (2004)) (citations omitted).

We turn then to consideration of the rules that Young violated. Rule 1.4(b) of the Arkansas Rules of Professional Con-

---

[3] Three committee members voted to reprimand Young, while four voted to suspend his license for six months.

[4] On June 28, 2007, Young petitioned the Committee for a stay of its order pending his appeal to this court. The petition was granted on July 6, 2007.

[5] Young fails to explain the nature of this alleged inconsistency.

duct (2007) reads that "[a] lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." The Committee found in its order that Young violated this rule by accepting Justin Thomas as a client without informing him that Young would "almost certainly be suspended from law practice a few days later for several months and be unable to represent Justin." Had he informed the Thomases of this fact, the Committee observed in its order, they could have saved the $3,000 which they·"paid to Young for legal services he would not be able to render."

Rule 8.4(c) of the Arkansas Rules of Professional Conduct states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." The Committee found in its order that Young violated this rule by "knowingly fail[ing] to tell Linnie and Justin Thomas on March 22, 2004 that Young's law license was almost certainly about to be suspended for three (3) months only a few days later," by knowingly accepting $3,000 from Ms. Thomas despite his pending suspension, and by telling Ms. Thomas on May 31, 2006 that he would refund $2,500 to her but failing to make regular payments.

The suspension of an attorney's license to practice law for up to five years is one of the sanctions that the Committee is permitted to impose. Ark. Sup. Ct. P. Regulating Prof'l Conduct § 17(E)(2). Suspension is appropriate if the Committee finds that a lawyer has engaged in "serious misconduct" that does not warrant disbarment. *Id.* Included in the various types of conduct that constitute serious misconduct are (1) "misconduct involv[ing] dishonesty, deceit, fraud, or misrepresentation by the lawyer" and (2) misconduct by a lawyer whose "prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities." *Id.* § 17(B)(3), (5).

In deciding what sanction to mete out, the Committee considers these factors:

A. The nature and degree of the misconduct for which the lawyer is being sanctioned.

B. The seriousness and circumstances surrounding the misconduct.

C. The loss or damage to clients.

D. The damage to the profession.

E.  The assurance that those who seek legal services in the future will be protected from the type of misconduct found.

F.  The profit to the lawyer.

G.  The avoidance of repetition.

H.  Whether the misconduct was deliberate, intentional or negligent.

I.  The deterrent effect on others.

J.  The maintenance of respect for the legal profession.

K.  The conduct of the lawyer during the course of the Committee action.

L.  The lawyer's prior disciplinary record, to include warnings.

*Id.* § 19.

■ Weighing these factors, the Committee's decision to suspend Young's license for six months was clearly supported by the preponderance of the evidence. The Committee found that Young took $3,000 from Linnie Thomas while knowingly withholding information that would almost certainly have caused her to retain another lawyer in Young's stead. By so doing, Young profited at the expense of Linnie Thomas, who eventually had to spend additional money to retain another attorney. This easily qualifies as serious misconduct involving "dishonesty, deceit, fraud, or misrepresentation." *Id.* § 17(B)(3).

Moreover, Young had a previous disciplinary record that included (1) a three-month suspension for failing to respond to a complaint from a judge alleging that Young failed to appear for a client's scheduled court appearance, wrote a check for his client's bond on a closed account that purported to be Young's trust account, and failed to pay a contempt fine that was issued by the court; (2) a five-month consent suspension based on a complaint from a bankruptcy judge alleging that Young repeatedly filed deficient schedules, failed to appear for numerous hearings, failed to comply with court orders to pay fines of $2,000 and disgorge fees, wrote a check to disgorge fees that was returned for insuffi-

cient funds, and lied to the court eleven times about the status of his fee; (3) a warning for failure to file an appellate brief for a criminal client, resulting in dismissal of the appeal; and (4) a reprimand for allowing his nonlawyer wife to manage the firm trust account without proper training and supervision, resulting in his wife writing checks for personal obligations out of the trust account and depositing nonclient funds into the trust account and leading to five overdrafts of the trust account. This prior record indicates a "substantial disregard of the lawyer's professional duties and responsibilities." *Id.* § 17(B)(5).

Young's dishonest conduct and failure to communicate adequately with the Thomases led him to profit at the Thomases' expense. Whatever Young's state of mind at the time he took the money, it is clear that he knew of the pending suspension of his license, and his conduct cannot be considered merely negligent. Young's prior disciplinary record, in addition, demonstrates a substantial disregard of his professional duties and responsibilities.

Affirmed.

DANIELSON, J., not participating.