

# SUPREME COURT OF ARKANSAS

No. CV–13–1055

| | |
|---|---|
| JOHN SKYLAR (SKY) TAPP, ARKANSAS BAR NO. 76123 <br> APPELLANT <br><br> V. <br><br><br> STARK LIGON, EXECUTIVE DIRECTOR OF THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT <br> APPELLEE | **Opinion Delivered** September 18, 2014 <br><br> APPEAL FROM THE ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT, PANEL A [NO. CPC-12-45] <br><br><br><br> AFFIRMED. |

## JIM HANNAH, Chief Justice

Appellant, John Skylar Tapp, appeals from the order of Panel A of the Arkansas Supreme Court Committee on Professional Conduct (the "Committee") finding him in violation of Rules 1.7(a), 1.9(a), and 8.4(a), (c), and (d) of the Arkansas Rules of Professional Conduct (2011), suspending his license to practice law for ninety days, and ordering him to pay a fine of $10,000.[1] On appeal, Tapp contends that a suspension under the facts of this case is excessive and, therefore, this court should reduce the suspension to a lesser penalty.

The underlying facts and procedural history are set forth by the Committee in its Hearing Findings and Order:

---

[1]The suspension was stayed pending appeal to this court. Subsequently, the Committee imposed an interim suspension on Tapp's license to practice law due to a pending disbarment proceeding. *See Tapp v. Ligon*, 2013 Ark. 259, 428 S.W.3d 492.

SLIP OPINION

The formal charges of misconduct upon which this Findings and Order is based were developed from information provided to the Committee by Nita Bargen of Hot Springs on April 3, 2012. The information related to the representation of Ms. Bargen in 2006 by [Tapp], an attorney practicing primarily in Hot Springs, Garland County, Arkansas. On August 9, 2012, [Tapp] was served with a formal complaint, supported by an affidavit from Bargen, to which [Tapp] filed an answer. Rebuttal was filed. The case proceeded to ballot vote. The Panel B decision was communicated to Tapp, who requested a public hearing.

The hearing was conducted before Panel A on July 19, 2013, in Little Rock. The hearing panel consisted of Panel A members Danyelle Walker (Chair), Jerry Pinson, Steven Shults, Michael Boyd, Helen Herr, Panel B member Mark Limbird, and Panel D member Laura Partlow. Limbird and Partlow served in place of Panel A members Benton Smith and Elaine Dumas who were unavailable for the hearing. Stark Ligon represented the Office of Professional Conduct. Jeff Rosenzweig represented Sky Tapp.

The facts, as pled, in summary are that in 2002, K.S. was born to Nita Bargen in Kansas. Jason Schmidt is the father. Bargen and Schmidt later lived together in Garland County until they separated in January 2006. Later that month, represented by attorney Tracy Turner, Bargen filed suit as Garland Circuit 26DR–2006–101, seeking a determination of paternity declaring Schmidt, to whom she had never been married, to be the father of K.S., and seeking support and other relief. Schmidt answered, by attorney Lance Garner, admitting paternity and seeking custody of K.S.

On April 6, 2006, Bargen, stating she was seeking more aggressive representation, consulted with Hot Springs attorney Sky Tapp, and revealed much of her confidential information related to Jason Schmidt to him, especially personal financial matters. Bargen retained Tapp in the Schmidt case with an $1,800 retainer fee payment. Shortly thereafter, Bargen changed her mind, notified Tapp she would not be using him as her lawyer in the Schmidt case, asked for and on May 26, 2006, received a statement, a check from Tapp for a $1,432.25 fee refund, and obtained her file.

Continuing with Turner as her lawyer, on March 13, 2007, an Agreed Order was entered establishing Schmidt's paternity of K.S. and setting a hearing for August 30, 2007, on all other issues. A hearing on October 29, 2007, resulted in the court requesting additional financial information from Schmidt and his businesses, to be filed by May 15, 2008. On June 17, 2008, an Agreed Order was entered fixing child support and finding there was no current arrearage.

On April 27, 2009, Schmidt substituted John Howard as his counsel, replacing

Lance Garner. Bargen then filed for contempt against Schmidt, alleging unpaid child support. That issue was dealt with in an Agreed Order filed September 10, 2010, finding Schmidt owed Bargen $2,476. In December 2010, through Howard, Schmidt filed an ex parte emergency petition seeking custody of K.S. An Agreed Order was entered December 30, 2010, with Joe Churchwell now representing Bargen, continuing the hearing set for that date, and asking for appointment of an attorney ad litem. Schmidt was again ordered to provide his financial information by January 30, 2011.

On August 9, 2011, Churchwell filed a Motion for Body Attachment, alleging Schmidt had failed to deliver his 2010 tax returns and financial information, pursuant to an Order filed July 11, 2011. Howard was permitted to withdraw as Schmidt's counsel on March 9, 2012, and was replaced by Sky Tapp as Schmidt's new lawyer.

On March 20, 2012, Tapp filed a Motion for New Hearing and for other relief for Schmidt. On March 30, 2012, Churchwell filed a Motion to Disqualify Tapp as Schmidt's attorney in the Bargen case, claiming Tapp had a conflict under Arkansas Rules of Professional Conduct 1.7 and 1.9, based [on] his representation of Bargen in 2006 in the same matter. Tapp disputed the motion to disqualify. Churchwell then obtained from Bargen her copy of Tapp's office file on his contact with and employment by Bargen in April–May 2006.

After a hearing on April 30, 2012, the trial court, Judge Marcia Hearnsberger, granted the motion, stating there was a clear conflict as to Tapp, and entered its Order on May 17, 2012, disqualifying Tapp and any of his practice partners or associates from representing Schmidt in the Bargen case.

In his Answer to the Committee Complaint, Tapp stated (1) he never signed or authorized the May 26, 2006 billing given to Bargen; (2) the handwritten notes in the "Bargen" file were not his handwriting; (3) he did not have any discussions in April–May 2006 with Bargen about Jason Schmidt, paternity, or child support issues; (4) the issues he actually discussed with her and counseled her about had nothing to do with Jason Schmidt; and (5) his office file did not contain many of the "Bargen" documents that appeared later, because, he claims, his long-time employee, Shirley Scott, took the Bargen file with her when she left him and went to work for Churchwell, Bargen's attorney who filed the 2012 motion that led to Tapp's disqualification. Tapp also alleged that Churchwell and Tapp had a very acrimonious split-up in later 2007, after Churchwell had briefly worked in Tapp's law offices, and Churchwell had been making various ethical violation allegations against Tapp since their split. Bargen and Churchwell submitted rebuttals that disputed part of Tapp's Answer.

At the Committee hearing, the combined pleadings were admitted as Hearing Exhibit 1. Additional exhibits were received. Testimony was received from Sky Tapp, Nita Bargen, Shirley Scott, and Joe Churchwell.

Among other matters, Tapp testified that on April 6, 2006, when Bargen and he conferred, she presented to him information only about her personal relationship with another person, not Jason Schmidt, and claimed that Bargen and Tapp never discussed her pending legal matters, paternity and support, related to Schmidt. Tapp maintained he never received any confidential information from Bargen that would serve as a basis for his disqualification six years later in representing Schmidt in the same case against Bargen. Among other documents he disputed, Tapp denied a sheet of handwritten billing charges to Bargen in May 2006 was in his handwriting or that he had ever seen or authorized the May 26, 2006 billing statement to Bargen prepared in his office. Tapp offered that the disputed documents were created by others that were in his office. Tapp also questioned the motives of Churchwell, claiming he and two other young attorneys Tapp had brought into his office in September 2007, had abruptly left without notice to Tapp in November 2007. Tapp also stated that Churchwell had a history of filing ethics complaints against Tapp.

Among other matters, Bargen testified that on April 6, 2006, she gave Tapp confidential information about financial dealings between and among her, Jason Schmidt, and members of Schmidt's family which were crucial, in her opinion, to her effort to try to obtain appropriate child support from Schmidt. Bargen testified that she decided not to continue with Tapp as her lawyer in May 2006 because of his belittling conduct toward her and because she could not afford his $425 per hour fee rate.

Bargen testified that she went back to Tapp in Sept.–Oct. 2007 because she had heard he then had several additional lawyers in his firm and she might find aggressive representation from one of them. She testified the visit was also driven by the August 2007 purchase by Jason Schmidt of a well-known bar in Hot Springs, Smyley's Crab Shack, and his sudden apparent affluence while she was still having to pursue him in court for payment of modest child support. She stated Tapp introduced her to two young lawyers at his firm, including Churchwell, and briefed them on her matter. She was unable to afford their quoted $250 per hour rate and declined to employ any of the Tapp attorneys. Tapp disputed that he had any such contact with Bargen in 2007.

Among other matters, Scott testified that (1) she had worked for several Hot Springs lawyers over a period of more than thirty years; (2) she had worked for Tapp for six years without incident until she left voluntarily in late 2006, as a result of what she considered to be an untenable situation after Tapp brought his new wife in as

office manager; (3) the billing and time notes on Bargen were in Tapp's handwriting; (4) Tapp gave her the handwritten billing notes; (5) she prepared the May 26, 2006 billing statement to Bargen; and (6) every entry on the refund check from Tapp to Bargen was in Tapp's handwriting.

Among other matters, Churchwell testified as to his version of the practice agreement he and two other young lawyers entered into with Tapp in August 2007, the problems that arose, and the circumstances of the collective departure of the three younger lawyers after less than two months in practice with Tapp.

Upon consideration of the complaint and attached exhibits, Tapp's response, and other matters before it, the Committee found that Tapp's conduct violated Rules 1.7(a), 1.9(a), and 8.4(a), (c), and (d) and suspended his license to practice law for ninety days. The Committee also imposed a $10,000 fine and ordered Tapp to pay $753.50 in costs. Tapp then filed this appeal.

In this case, Tapp does not challenge the Committee's findings that he violated the Rules of Professional Conduct but only the decision to suspend his license to practice law for ninety days.[2] In reviewing appeals from the Committee, this court conducts a de novo review on the record and affirms actions taken by the Committee unless they are clearly against the preponderance of the evidence. *E.g.*, *Young v. Ligon*, 373 Ark. 289, 292, 283 S.W.3d 587, 589 (2008).

We now consider the rules that Tapp violated. Rule 1.7(a) states, in pertinent part, that

a lawyer shall not represent a client if the representation involves a concurrent conflict

---

[2]Although Tapp states in his brief that he "disagrees" with some of the Committee's findings, he also states that he believes that "under this court's interpretation of 'clearly erroneous,' it would be impossible to overturn" those findings.

of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another clients; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

The Committee found that Tapp violated Rule 1.7(a)

in that in early 2006 Nita Bargen consulted with Tapp, conveyed confidential information to him about her legal matter with Jason Schmidt, and retained Tapp with an $1,800 retainer fee payment to represent her in a pending paternity case with Schmidt, Garland Circuit No. 26DR-2006-101. She discharged Tapp within weeks. In early 2012, Tapp appeared as counsel for Schmidt in the same case, contesting the same issues Bargen had discussed with Tapp in 2006 when Bargen employed him to represent her. The trial court disqualified Tapp from representing Schmidt, finding a clear conflict in Tapp doing so. Tapp's responsibility to Schmidt would have been materially limited by Tapp's responsibility to a former client, Bargen, in the very same matter.

Rule 1.9(a) states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interest of the former client unless the former client gives informed consent, confirmed in writing." The Committee found that Tapp violated Rule 1.9(a) because he did not obtain informed consent in writing from Bargen before representing Schmidt in litigation against her in 2012.

Rule 8.4(a) states that "[i]t is professional misconduct for a lawyer to violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another." The Committee found that Tapp violated Rule 8.4(a) because he had violated Rule 1.7(a) regarding "conflicts" when he represented Schmidt in 2012 in a case against Bargen, after Tapp had been briefly employed and paid a

fee in early 2006 by Bargen to represent her against Schmidt in the same case.[3]

Rule 8.4(c) states that "[i]t is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The Committee found that Tapp violated Rule 8.4(c) because he engaged in conduct that involved deceit or misrepresentation when he undertook to represent Schmidt in 2012, knowing that Tapp had been employed, even if briefly, and paid a fee by opposing party Bargen to represent her in the same case against Schmidt in early 2006.

Rule 8.4(d) states that "[i]t is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." The Committee found that Tapp's disregard of his clear conflict in representing Schmidt against Bargen in 2012 caused the circuit court to expend time and resources to hear and rule on Bargen's motion to

---

[3]The Committee also found that Tapp violated Rule 8.4(a) because he had violated Rule 1.9(c) regarding "conflicts" when he represented Schmidt in 2012 in a case against Bargen, after Tapp had been briefly employed and paid a fee in early 2006 by Bargen to represent her against Schmidt in the same case. But Tapp was not found to have violated Rule 1.9*(c)*; he was found to have violated Rule 1.9*(a)*. Rule 1.9(c) states that

> [a] lawyer who has formerly represented a client in a matter or to whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

The Committee did not find that Tapp had used information relating to the representation to the disadvantage of Bargen or that Tapp had revealed information relating to the representation.

disqualify Tapp.

The suspension of an attorney's license to practice law for a fixed period of time not less than thirty days and not in excess of five years is one of the sanctions that the Committee is authorized to impose. Ark. Sup. Ct. P. Regulating Prof'l Conduct § 17(E)(2) (2011). Suspension is appropriate if the Committee finds that a lawyer has engaged in "'serious misconduct,' and, consonant with the pertinent factors listed in Section 19, the nature and degree of such misconduct do not warrant disbarment." *Id*. "Serious misconduct" includes "misconduct involv[ing] dishonesty, deceit, fraud, or misrepresentation by the lawyer" and misconduct by a lawyer whose "prior record of public sanctions demonstrates a substantial disregard of the lawyer's professional duties and responsibilities." *Id*. § 17(B)(3), (5). In deciding which sanction to impose, the Committee must consider:

A. The nature and degree of the misconduct for which the lawyer is being sanctioned.

B. The seriousness and circumstances surrounding the misconduct.

C. The loss or damage to clients.

D. The damage to the profession.

E. The assurance that those who seek legal services in the future will be protected from the type of misconduct found.

F. The profit to the lawyer.

G. The avoidance of repetition.

H. Whether the misconduct was deliberate, intentional or negligent.

I. The deterrent effect on others.

J. The maintenance of respect for the legal profession.

8

K. The conduct of the lawyer during the course of the Committee action.

L. The lawyer's prior disciplinary record, to include warnings.

M. Matters offered by the lawyer in mitigation or extenuation except that a claim of disability or impairment resulting from the use of alcohol or drugs may not be considered unless the lawyer demonstrates that he or she is successfully pursuing in good faith a program of recovery.

*Id.* § 19(A)–(M).

Based on our de novo review, we conclude that the Committee's decision to suspend Tapp's license to practice law for ninety days was clearly supported by a preponderance of the evidence. The Committee found that Tapp had engaged in conduct involving deceit or misrepresentation when he undertook to represent Schmidt against Bargen in 2012, after he had represented Bargen in the same case against Schmidt in 2006. Pursuant to the Procedures, conduct involving deceit or misrepresentation qualifies as "serious misconduct." *Id.* § 17(B)(3).

Moreover, Tapp has a disciplinary record with the Committee. From 1984 to 2011, Tapp received numerous sanctions, including (1) a warning for failing to timely lodge a record; (2) a caution for neglecting a legal matter entrusted to him; (3) a caution for failing to act with reasonableness and promptness in representing a client, failing to comply with requests for information, and failing to promptly surrender papers to a client; (4) a caution for failing to take proper steps to be relieved from a case; (5) a caution for failing to inform a client that he had been served with requests for admission by opposing counsel and failing to file timely responses, which resulted in deemed admissions and a judgment against the client, failing to respond to requests for admission and other discovery requests from the

client after the client had sued Tapp, and failing to make any attempt to satisfy a default judgment entered against him in favor of the client; (6) a caution for failing to file a notice of appeal from an entry of judgment; (7) a caution for engaging in conduct that resulted in a client's loss of his right to appeal a circuit court decision affirming the adoption of a child who the client claimed was his son; (8) a reprimand for nonsuiting a lawsuit without informing the client, failing to refile within the one-year time frame, and failing to communicate with the client and to act with diligence; (9) a reprimand for failing to take action to stop a client's money from being deposited in court, which resulted in the client's loss of the money by default, and failing to respond to any attempted communication; (10) a reprimand for failing to properly and timely file a claim with the estate of the deceased in a personal-injury case, which resulted in a client's being prohibited from recovering from the estate anything more than the amount of insurance coverage; (11) a reprimand for failing to properly file a notice of appeal, which resulted in the dismissal of the appeal, and for entering into an agreement in which he attempted to limit malpractice liability; (12) a reprimand for failing to advise a client of a trial date, which resulted in the client's failure to appear in court for trial, and failing to appear in court for that same trial, which resulted in a judgment being entered against the client, and failing to advise the client of the judgment against him; and (13) a reprimand for continuing to represent a party in litigation after having been disqualified from the representation.[4] This disciplinary record reflects a "substantial disregard

---

[4]The Committee noted in its Hearing Findings and Order that it had considered Tapp's disciplinary record when deciding which sanction to impose.

of the lawyer's professional duties and responsibilities." *Id*. § 17(B)(5); *see also id*. § 19(L).

Given that Tapp's conduct qualified as "serious misconduct" and that his disciplinary record demonstrates a substantial disregard of his professional duties and responsibilities, we do not agree with Tapp's contention that a suspension is unduly harsh under the facts of this case. Accordingly, we affirm the sanction imposed by the Committee.

Affirmed.

*Jeff Rosenzweig*, for appellant.

*Stark Ligon*, Committee on Professional Conduct, for appellee.