SLIP OPINION

Cite as 2017 Ark. 185

# SUPREME COURT OF ARKANSAS

No. D–13–150

| | |
|---|---|
| | **Opinion Delivered:** May 18, 2017 |
| STARK LIGON, AS EXECUTIVE DIRECTOR, ARKANSAS SUPREME COURT COMMITTEE ON PROFESSIONAL CONDUCT<br>PETITIONER | PETITION FOR DISBARMENT [NOS. CPC NO. 2012-47 AND CPC NO. 2012-49] |
| V. | HONORABLE JOHN R. LINEBERGER, SPECIAL JUDGE ON ASSIGNMENT |
| JOHN SKYLAR "SKY" TAPP, ARKANSAS BAR ID #72123<br>RESPONDENT | <u>ORDER OF DISBARMENT ISSUED</u>. |

**SHAWN A. WOMACK, Associate Justice**

This is an original action under the Arkansas Supreme Court Procedures Regulating Professional Conduct. Stark Ligon, as Executive Director of the Arkansas Supreme Court Committee on Professional Conduct ("Committee"), seeks the disbarment of John Skylar Tapp ("Tapp"), an attorney licensed to practice law in the State of Arkansas. Our jurisdiction is pursuant to Arkansas Supreme Court Procedures Regulating Professional Conduct section 13(A).

On March 12, 2013, Director Ligon filed a petition for disbarment, which was amended three times to include additional complaints. On March 15, 2013, we appointed special judge John Lineberger to preside over this matter. *Ligon v. Tapp*, 2013 Ark. 123 (per curium). While the disciplinary proceedings were ongoing, Panel B of the Committee entered an interim suspension of Tapp's license to practice law. *Tapp v. Ligon*, 2013 Ark. 259, 428 S.W.3d 492. The case was tried over a seventeen-day period from February 24 to

October 10, 2014. The record generated is over 7,200 pages and encompasses twenty-seven volumes. The Committee alleged over forty violations of the rules governing the conduct of attorneys throughout six separate cases. Each case was individually ruled on during the proceedings. The special judge entered findings of facts and conclusions of law on May 16, 2016, wherein he detailed his findings over 112 pages and concluded that disbarment was the appropriate sanction in this case. We accept his findings and recommendation.

## I. *Standard of Review*

Disciplinary proceedings are neither civil nor criminal in nature but are *sui generis*, meaning of their own kind. *Ligon v. Dunklin*, 368 Ark. 443, 447, 247 S.W.3d 498, 503 (2007). We will accept the special judge's findings of fact unless they are clearly erroneous. *Id.*, 247 S.W.3d at 498. We provide the appropriate sanctions based on the evidence. *Id.* There is no appeal from this court except as may be provided by federal law. *Id.*

A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* at 447–48, 247 S.W.3d at 503; *Ligon v. McCullough*, 2009 Ark. 165A, at 4, 303 S.W.3d 78, 80; *Ligon v. Stewart*, 369 Ark. 380, 384, 255 S.W.3d 435, 438 (2007). We must view the evidence in a light most favorable to the decision of the special judge, resolving all inferences in favor of his or her findings of fact. *Stewart*, 369 Ark. at 384, 255 S.W.3d at 439; *Ligon v. Newman*, 365 Ark. 510, 516, 231 S.W.3d 662, 667 (2006). Disputed facts and determinations of the credibility of witnesses are within the province of the fact-finder. *Stewart*, *supra*; *Newman*, *supra*.

## II. *Conduct*

The special judge made the following findings of fact and conclusions of law. We will briefly address the allegations below.

## A. Fenimore Matter

Tapp formed an Arkansas Company, GFST, LLC ("GFST), with his former client, Marilyn Garrett-Fenimore, and her husband to develop coastal property in Florida. Tapp owned one-half of the company and the other half was owned by Garret-Fenimore, LLC, which was managed by the Fenimores. GFST was unable to meet its financial obligations after a downturn in the market, and the bank foreclosed on the GFST properties. Tapp then filed two pro se Chapter 13 bankruptcy petitions, one was for himself and the other was on behalf of GFST and listed the Fenimores as joint debtors and co-owners. Neither of the Fenimores gave him permission to file for bankruptcy on their behalf. Judge Taylor ultimately dismissed both petitions. Tapp admitted he had little experience in bankruptcy court, but could not afford to hire an attorney to represent him in the matter.

Special Judge Lineberger found that Tapp's actions violated the following rules of the Arkansas Rules of Professional Conduct: 1.1; 1.4(a)(1); 3.1; 3.3(a)(1); 3.4(b); 4.4(a); and 8.4(c), (d). Tapp filed two complex bankruptcy petitions with limited knowledge and experience in bankruptcy court, he represented the Fenimores in the proceeding without their consent, he did not have the authority to unilaterally file for bankruptcy on behalf of GFST, and he improperly filled out the petitions. He failed to correct his mistake when it became clear that GFST was not eligible for Chapter 13 relief. His ignorance consumed valuable judicial resources that could have been used elsewhere. He filed for bankruptcy with the purpose to delay foreclosure proceedings and caused embarrassment to the



Fenimores by involving them in a bankruptcy proceeding. The special judge's findings are not clearly erroneous.

## B. Hurst Matter

Tapp represented his cousin, Katharine Hurst, during a divorce proceeding and obtained a divorce decree awarding each spouse half of the proceeds from the sale of their marital home. Tapp held Hurst's half of the funds in his client's trust account. The court of appeals affirmed the circuit court's decision in 2009, but Tapp refused to distribute the funds. After a filing with the Office of Professional Conduct ("OPC") in 2012, the OPC requested to review his financial statements regarding his trust account from 2006 to 2012. The statements revealed that despite his duty to hold the funds in his account, the funds available dipped well below the minimum $6,611.82 that he was obligated to hold in trust for Hurst several times during the period, and reached a balance as low as $6 at one point. He attempted to make up the difference by infusing fees earned in a separate case.

Special Judge Lineberger found that Tapp's actions violated the following rules of professional conduct: 1.15(a)(1), (4); 1.15(b)(1), (3); 1.16(d); and 8.4(c). Tapp argues that he did not distribute the funds because they belonged to the bankruptcy trustee and not his client. However, the judge rejected his argument and noted that he did not distribute the funds until after receiving an inquiry notice from the OPC. He failed to safeguard his client's funds, did not keep accurate records on a current basis, and commingled his funds with those of his clients. He declined to turn over his client's funds upon request despite his representation in the matter being terminated. Lastly, he made false statements to the OPC



and to Mr. Wertzel, the bankruptcy trustee, by stating that he had safeguarded the $6,611.82 in his client's trust account. The judge's findings are not clearly erroneous.

## C. Schlenker Condo Matter

Tapp was hired by Mandi and Garland Schlenker and Kathryn DeJarnette to represent them against another property owner in their condo unit who had negligently repaired her unit and caused damage to their surrounding units. Through the course of his representation he learned that the unit in question was currently in a foreclosure proceeding and was being sold at a public sale. He offered to attend the sale and asked his clients if they wanted to purchase the property, which they declined. He personally bought the property at the sale for $15,100, believing that it was in his clients' best interests. He then offered to sell it back to them for the purchase price with costs, but they once again declined.

Special Judge Lineberger found that Tapp's actions violated the following rules of professional conduct: 1.2(a); 1.7(a); and 8.4(c), (d). Immediately after he purchased the property he stepped into the shoes of the former owner, which was an adverse interest to his clients. Tapp was under an ethical obligation to notify his clients that he intended to purchase the property and allow them to consider and waive the conflict. The judge's findings are not clearly erroneous.

## D. Bowerman Matter

On October 24, 2011, Shawn Key filled suit on behalf of State Auto Property and Casualty Insurance Company ("State Auto") to obtain unpaid insurance premiums totaling $3,112 from James Bowerman. Tapp filed an answer on Bowerman's behalf denying liability. Key later discovered that Tapp had filed a lawsuit on Bowerman's behalf against



Susan Taylor in which he acknowledged the $3,112 debt, but contended that Taylor assumed the liability when she purchased his business. Attached to the complaint was a copy of the agreement between Bowerman and Taylor, which stated that Taylor assumed no liabilities during the purchase of the business. Bowerman did not disclose this suit during requests for admission that were administered under oath. Key thereafter filed a motion for summary judgment and request for sanctions, which Judge Cook granted on December 14, 2012.

The special judge found that Tapp's actions violated the following rules of professional conduct: 3.1, 3.3(a)(1), 4.1(a), and 8.4(c). Tapp previously represented Bowerman in his suit against Taylor and knew that Bowerman owed money to State Auto. Even if the amount was disputed, Tapp should have revealed the suit at the earliest opportunity instead of filing frivolous pleadings; his failure to do so resulted in a false representation of fact to the court and to Mr. Key. The primary motive for his tactics was to hinder and delay State Auto. The judge's findings were not clearly erroneous.

### E. Riley Divorce Matter

Tapp represented Andrew Riley in a divorce action, and a major contested point was which parent would have custody of their ten-year-old daughter. During mediation, the parties orally agreed to present three options to the judge: (1) pure joint legal custody, (2) joint legal custody with a primary physical-custodian parent that would rotate on a yearly basis, and (3) joint legal custody with the mother as the primary physical custodian. Tapp and Strausse, the attorney representing the mother, met with Judge Hearnsberger on July 24, 2013, and the judge selected the last option. Tapp alleges that the judge instead selected

the second option. Judge Hearnsberger testified that there could be no confusion about her choice, and Strausse testified that Tapp left the meeting early and the judge asked her trial court assistant to contact Tapp to ensure he was clear that she had selected the last option. On August 12, Tapp refused to agree to an order that represented the judge's choice. Two days later at a hearing, Judge Hearnsberger recapped her decision with Tapp, and in that hearing he admitted that he had received a call from the judge's trial assistant confirming that she had selected the third option.

The special judge found that Tapp violated the following rules of professional conduct: 3.1; 3.3(a); 4.4(a); 8.4(c), (d). Tapp argues that there was no signed agreement regarding mediation, and therefore, there was never an agreement to present the judge with three options. The judge found that his position was undermined by his own testimony regarding the mediation agreement as well as his client's admission that the mediation had resulted in an agreement to present the judge with three options. Tapp specifically acknowledged in the hearing that Judge Hearnsberger had selected the last option, which was confirmed by her trial assistant. He ignored that order, and his assertion that they did not agree was contrary to the evidence presented from mediation. It was further a misrepresentation of fact that resulted in a delay of the proceedings and a waste of judicial resources. The judge's findings are not clearly erroneous.

### F. Tankersley Matter

The following misconduct revolves around two real estate developments, Vizcaya and Lake Pointe. In 2003 Don and Evelin Hamilton were approached by Michael Tankersley about selling their four acres to develop into a community known as Vizcaya.

Tankersley, along with three other partners, formed BBDT Properties to purchase the real estate. BBDT and the Evelin Hampton Trust, which was owned by Evelin, formed EMHT Properties, LLC, to facilitate the operation of Vizcaya. Under the sales and operating agreements, the Hamiltons were to receive $1.5 million for the four acres, and the Evelin Hampton Trust was to receive 50 percent of the profits from the sale. Don Hamilton passed away and Evelin Hamilton changed her name to Hampton. Vizcaya became a development consisting of thirteen garden homes (phase 1), with more developments planned on the remaining acres (phase 2). Evelin Hampton built a house on one of the lots in Vizcaya.

In 2006, Tankersley formed SJT Properties, LLC ("SJT"), and approached Hampton about investing in another development, Lake Pointe. She agreed to invest $200,000 into the project and pledged her lot in Vizcaya as collateral to the bank; in exchange, she was going to receive 50 percent of the profits from the sales. In May 2006, SJT purchased 1.47 acres from the former Pointe Condominiums, LLC ("Pointe"). Ricky Hood owned a partial interest in the Pointe and had previously filed a *lis pendens* against the Pointe to secure payment on a debt, which had been filed by Tapp. As consideration for his interest in the company, he was promised a unit in the completed Lake Pointe condos and a boat slip; in exchange, Hood agreed to release the *lis pendens* and dissolve the Pointe.

In November 2006, Hampton and Tankersley began having issues regarding the business dealings with the two development properties. In January 2007, Hampton consulted with Tapp and filed a lawsuit naming Tankersley, Tankersley's wife, BBDT, and SJT as defendants and filed a *lis pendens* on both developments. Hampton claimed that she



was a joint owner in both projects and Tankersley was managing the projects in a way that was oppressive to her interests. She based her ownership claims on a "water stained" operating agreement from December 2006, which she claimed gave her an interest in SJT and the Lake Pointe project. The document did not include any signatures, was out of order, and was missing pages; Judge Lineberger found that it was "devoid of credibility." On October 29, 2008, Tapp filed two notices of *lis pendens* on behalf of Hampton and her trust, and on behalf of Hood and his wife. The notices included all the Lake Pointe developments, including lots that had already been sold and the unit that Hood was promised from his sale. As a result, all sales and construction at Lake Pointe ceased and ultimately led to foreclosure. Hood lost the unit he was promised in Lake Pointe, and Hampton lost her house in Vizcaya as security on the Lake Pointe loan and her monetary investment. SJT then filed suit against both parties, which led to a situation in which Hampton sought to recover from SJT, which then sought to recover from Hood.

Judge Lineberger found Tapp's actions violated the following rules of professional conduct: 1.1; 1.4(a)(1), (3); 1.7(a), 3.1, 3.4(b). Tapp maintains that his filing of the *lis pendens* was proper, there was no conflict of interest, and his clients consented to his representation. Tapp filed notices of *lis pendens* that were not in compliance with Arkansas law when his clients did not own an interest in the development property or have an active lawsuit. Tapp failed to adequately counsel his clients regarding the risks of maintaining the *lis pendens*. Representing both Hood and Hampton was a conflict of interest because each one's interest was adverse to the other, and there was not an adequate waiver by either party of that conflict. His purpose was to delay and hinder the development of the projects. He further

SLIP OPINION

filed the *lis pendens* to embarrass Tankersley's wife, who had no interest or ownership in the developments. Judge Lineberger concluded that Tapp's conduct rose to the level of fraud or misrepresentation. His findings are not clearly erroneous.

### III. *Aggravating and Mitigating Factors*

The purpose of disciplinary actions is to protect the public and the administration of justice from lawyers who have not discharged their professional duties to clients, the public, the legal system, and the legal profession. *Stewart*, 369 Ark. 380, 384–85, 255 S.W.3d 435, 439. When model rules have been violated by either serious or lesser misconduct, a penalty phase proceeds in which the defendant attorney and the Committee's executive director are allowed to present evidence and arguments regarding aggravating and mitigating factors to assist in determining the appropriate sanction. *Ligon v. Price*, 360 Ark. 98, 114, 200 S.W.3d 417, 427 (2004); *Newman*, 365 Ark. at 526, 231 S.W.3d at 673. Aggravating factors developed by the American Bar Association Joint Committee on Professional Standards and adopted by this court in *Wilson v. Neal*, 332 Ark. 148, 964 S.W.2d 199 (1998), are:

(1) prior disciplinary offenses;

(2) dishonest or selfish motive;

(3) a pattern of misconduct;

(4) multiple offenses;

(5) bad faith obstruction of the disciplinary proceedings by intentionally failing to comply with these Procedures or orders of the Committee;

(6) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

(7) refusal to acknowledge the wrongful nature of the conduct;

(8) vulnerability of the victim;

(9) substantial experience in the practice of law;

(10) indifference to making restitution; and

(11) illegal conduct, including that involving the use of controlled substances.

Mitigating factors are:

(1) absence of a prior disciplinary record;

(2) absence of a dishonest or selfish motive;

(3) personal or emotional problems;

(4) timely good faith effort to make restitution or to rectify the consequences of the misconduct;

(5) full and free disclosure to the disciplinary board or cooperative attitude towards the proceedings;

(6) inexperience in the practice of law;

(7) character or reputation;

(8) physical disability;

(9) mental disability or chemical dependency including alcoholism or drug abuse when:

> (a) there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

> (b) the chemical dependency or mental disability caused the misconduct;

> (c) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

> (d) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(10) delay in [the] disciplinary proceedings;

(11) impositions of other penalties or sanctions;

(12) remorse;

(13) remoteness of prior offenses.

*Newman*, 365 Ark. at 526–28, 231 S.W.3d. at 674; Ark. R. Prof'l Conduct § 19.

Judge Lineberger found the following aggravating factors: (1) prior disciplinary offenses, (2) dishonest or selfish motive, (3) pattern of misconduct, (4) multiple offenses, and (5) refusal to acknowledge the wrongful nature of his conduct, although he did admit some violations. The judge noted that between 1984 and 2013 Tapp had accumulated fourteen sanctions prior to these proceedings, and we had previously stated that his record represented a "substantial disregard" of his professional responsibilities. *Tapp v. Ligon*, 2014 Ark. 374, at 11, 441 S.W.3d 4, 11. The judge also emphasized that five of Tapp's past instances of misconduct occurred within the past nine years, which indicated that prior disciplinary actions were insufficient to curtail his conduct. The only case involving lesser misconduct was the Schlenker Condo matter. The rest involved serious violations of the rules, including: dishonesty, deceit, fraud, and misrepresentation; misappropriation of client funds; and conduct that resulted in substantial prejudice to his clients and others. The judge did not find that any mitigating circumstances existed.

IV. *Appropriate Sanctions*

We now discuss the appropriate sanctions that should be applied in this case. The sanctions enumerated in Rule 17 are divided by serious and lesser misconduct. *Neal v. Matthews*, 342 Ark. 566, 572, 30 S.W.3d 92, 94 (2000). Serious misconduct warrants a

sanction terminating or restricting the lawyer's license to practice law, whereas lesser misconduct does not. *Id*. Serious misconduct occurs if any of the following apply:

(1) The misconduct involves the misappropriation of funds;

(2) The misconduct results in, or is likely to result in, substantial prejudice to a client or other person;

(3) The misconduct involves dishonesty, deceit, fraud, or misrepresentation by the attorney;

(4) The misconduct is part of a pattern of similar misconduct;

(5) The attorney's prior record of public sanctions demonstrates a substantial disregard of the attorney's professional duties and responsibilities; or

(6) The misconduct constitutes a "Serious Crime," as defined in these Procedures.

Ar. R. Prof'l Conduct § 17(B). Given Tapp's previous history of misconduct, coupled with the five instances of serious misconduct in the present case, Judge Lineberger concluded that disbarment was the appropriate sanction. Tapp argues that this case is not like those in which we have determined that disbarment is an appropriate sanction, and we should instead impose a suspension. *Walker*, 2009 Ark. 136, at 20, 297 S.W.3d at 11 (disbarment appropriate when violations included conversion of client funds, failing to maintain his trust account records, and continuing to practice law after his license had been suspended.); *Stewart*, 369 Ark. at 391–92, 255 S.W.3d at 443–44 (disbarment appropriate when attorney practiced law without a license and obtained a felony DWI conviction); *Ligon v. McCullough*, 2009 Ark. 165A, at 12, 303 S.W.3d 78, 85 (taking client funds for personal use, charging fees for work never performed, and failing to keep clients apprised of matter that was dismissed due to his own misconduct warranted disbarment). Tapp argues he should instead be sanctioned in such a manner that will allow him to eventually resume his practice. He

also presented testimony from two judges who testified to his work as well as evidence that he previously had a substantial private practice.

We disagree with his position that a suspension is appropriate. During his representation of Hurst, Tapp failed to maintain adequate funds in his trust account and allowed the funds to drop well below the required amount several times. He further did not distribute the funds despite her requests and distributed the funds only after an investigation from the OPC. Mishandling a client's funds requires strict application of our rules. *See McCullough*, 2009 Ark. 165A, at 12, 303 S.W.3d at 85. Further, filing bankruptcy on behalf of a business entity that was not eligible for bankruptcy and naming two business partners as joint debtors without their consent is obviously highly prejudicial and a misrepresentation. Tapp's conduct during the Tankersley matter resulted in both his clients losing real estate and the foreclosure of a development, which had drastic economic consequences for those involved. Tapp's combined conduct in all six cases seriously undermines the confidence that the public places in the legal profession. *See id.* His violations are further compounded by his history of past misconduct; particularly when we recently warned him that his actions were a severe disregard of our rules. *Tapp*, 2014 Ark. 374, at 11, 441 S.W.3d at 11 (imposing a ninety-day suspension based on his misconduct). We accept the judge's position that Tapp's history is evidence of a clear unwillingness to modify his unethical behavior. We therefore accept Judge Lineberger's recommendation and enter an order of disbarment.

Order of disbarment issued.

*Stark Ligon*, for petitioner.

*Jeff Rosenzweig*, for respondent.